UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE ASIA CO., LTD., et al., <br><br> Plaintiffs, <br><br> v. <br><br> JACK YUN MA, et al., <br><br> Defendants. | No.: 1:15-md-02631-CM (SDA) <br><br> Related cases: <br> 1:15-cv-00759-CM <br> 1:15-cv-00811-CM <br> 1:15-cv-00991-CM <br> 1:15-cv-01405-CM <br> 1:15-cv-05020-CM <br> 1:15-cv-04991-CM <br> 1:15-cv-05002-CM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
<u>APPROVAL OF DISSEMINATION OF NOTICE TO THE CLASS</u>**

Date: April 29, 2019

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     NATURE OF THE ACTION .......................................................................... 4

III.    PROCEDURAL HISTORY................................................................................ 5

        A.      The Initial Complaints And MDL Proceeding........................................ 5

        B.      The Consolidated Amended Complaint And Motion To Dismiss.......... 5

        C.      The Motion To Dismiss Is Granted With Prejudice .............................. 6

        D.      The Appeal And Remand........................................................................ 6

        E.      The Motion For Class Certification ....................................................... 7

        F.      Discovery ................................................................................................ 7

        G.      Mediation Efforts And Settlement Negotiation ..................................... 9

IV.     STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)................... 10

        A.      Preliminary Approval Should Be Granted, And Class Notice Given, If A
                Settlement Is "Fair, Reasonable, And Adequate" .................................. 10

        B.      A Settlement Should Be Preliminarily Approved If It Is Procedurally And
                Substantively Fair .................................................................................. 11

        C.      Public Policy Favors Settlement Of Securities Class Actions .............. 12

V.      ARGUMENT.................................................................................................. 12

        A.      The Settlement Represents A Very Favorable Outcome For The Class And
                Warrants Preliminary Approval............................................................. 12

                1.      The Settlement Is Is Fair, Reasonable, And Adequate ............. 12

                        a.      Plaintiffs And Plaintiffs' Counsel Adequately Represented
                                The Class.................................................................... 13

                        b.      The Settlement Is The Result Of Good Faith, Arm's-Length
                                Negotiations Conducted By Well-Informed And
                                Experienced Counsel .................................................. 14

       c.    The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation ................................................................ 15

           (1)    Risks Of Proving Liability ................................................ 15

           (2)    Risks Relating To Loss Causation And Damages ............ 17

    2.    The Settlement Treats All Members Of The Class Equitably Relative To Each Other ........................................................................... 20

  B.    The Court Should Approve the Proposed Form and Method of Notice To The Class ........................................................................................................... 21

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................. 23

VII.    CONCLUSION .......................................................................................................... 24

# TABLE OF AUTHORITIES

CASES

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ........................................................................ 19

*Christine Asia Co. Ltd. v. Ma, et al.*,
   718 Fed. App'x 20 (2d Cir. 2017)................................................................. 6, 16

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................... 22

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009) .................................................................... 11

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)............................................................................ 14

*Fishoff v. Coty Inc.*,
   No. 09-cv-628, 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ................................. 16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................... 14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   293 F.R.D. 459 (S.D.N.Y. 2013) .................................................................... 10

*In re AOL Time Warner, Inc.*,
   No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................... 20

*In re BankAtlantic Bancorp, Inc.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)......................... 19

*In re Bear Stearns Cos., Inc. Sec. Deriv. & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................. 14

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) .................................................................... 10

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)............................................................. 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................... 14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................... 14

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................................ 12

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) .......................................................................................... 11

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................ 20

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................ 15

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................................... 11

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................................ 12

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................ 11

*In re Stock Exchs. Options Trading Antitrust Litig.*,
  No. 99 Civ. 0962 (RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005) .................................... 10

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................ 23

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000) ......................................................................... 16, 18, 19

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010) .......................................................................................... 23

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .......................................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ....................................................................................... 12, 13, 14, 15

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................................. 15

STATUTES

15 U.S.C. § 78u-4(a)(7) ............................................................................................................. 22

RULES

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

Class Representatives, William Tai, Christine Asia Co., Ltd., Abel Amoros, Arthur Gabriel, Raymond Lee, and Gang Liu (collectively "Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached to the Stipulation and Agreement of Settlement as Exhibit A.[1]

## I.     PRELIMINARY STATEMENT

Plaintiffs have achieved an excellent resolution of this Action. The proposed Settlement will resolve all claims against Defendants in exchange for a sizable cash payment of $250,000,000 (the "Settlement Amount") for the benefit of the certified investor Class. This recovery represents approximately 17% of likely recoverable damages in this case, which is a tremendous result when compared to the average recoveries in other cases alleging losses of a similar magnitude, which in 2018 recovered approximately 2% of alleged damages. *See* n.9 *infra*.

This extraordinary result was achieved after more than four years of highly contested and risky litigation, and only after Plaintiffs overcame a considerable early obstacle following the Court's dismissal of the Action with prejudice. From successfully pursuing the appeal of the dismissal and throughout the accelerated and complex discovery period that ensued, Plaintiffs have expended significant efforts to successfully prosecute this Action. These efforts included

---

[1] Defendants in this Action are Alibaba Group Holding Limited ("Alibaba" or the "Company"), and Alibaba executives Jack Ma, Joseph Tsai, Jonathan Zhaoxi Lu, and Maggie Wei Wu (collectively, "Defendants").

All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 26, 2019 (the "Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Laurence M. Rosen (the "Rosen Decl.").

carrying out an extensive discovery process that involved Plaintiffs' review of over 1.1 million pages of documents, translating tens of thousands of documents from Chinese to English, taking two dozen fact depositions (22 of which took place in Hong Kong), defending the deposition of each Class Representative, litigating multiple discovery motions, briefing and obtaining class certification, exchanging expert reports, and taking and defending expert depositions.

This case did not settle until after the close of fact discovery, after a parallel state court action against Defendants settled,[2] after the Parties had exchanged expert reports on the issues of liability and damages, and while the Parties were in the process of conducting and completing expert depositions and preparing for summary judgment.  Thus, at the time the Settlement was achieved, Plaintiffs had a thorough understanding of the strengths and weaknesses of the Action.  Moreover, the Settlement is the product of a mediation process conducted under the auspices of former United States District Judge Layn Phillips, a prominent mediator of complex securities actions, who ultimately provided a mediator's recommendation that was accepted by the Parties.

The benefits of the proposed Settlement are particularly noteworthy when considered against the genuine risks that Plaintiffs faced in establishing Defendants' liability and recovering damages.  Summary judgment motions were due on April 29, 2019.  Plaintiffs were keenly aware that this Action, having been dismissed once, faced significant hurdles to survive summary judgment on the issues of falsity and, in particular, scienter.  Moreover, even assuming the Action survived summary judgment, Plaintiffs faced substantial additional risks proving their

---

[2] A parallel action against Defendants alleging violations of §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") for material misrepresentations and omissions in Alibaba's IPO Registration Statement that had been pending in the Superior Court of California, County of San Mateo (the "California Action") settled for $75,000,000 late last year.  Settlement of the California Action received preliminary approval on January 11, 2019, and the final approval hearing for the settlement in that matter is scheduled for May 17, 2019.  Claims alleged in the instant Action were specifically excluded from the settlement of the California Action.

claims at trial.  And, further still, assuming Plaintiffs prevailed on the merits at trial, they faced considerable risks and uncertainty in proving damages, as well as navigating any appeal which would surely follow a finding of Defendants' liability or a sizable jury award in Plaintiffs' favor.

The Settlement is inherently fair, reasonable, and adequate, in that it: (i) is the product of good-faith, arm's-length negotiations between experienced counsel, including significant mediation efforts facilitated by Judge Phillips, following extensive discovery; (ii) does not improperly grant preferential treatment to the Plaintiffs or any other members of the Class; and (iii) confers a substantial recovery that *far exceeds* the average percentage of recovery in securities cases alleging damages similar to the magnitude of losses here.

Entry of the Preliminary Approval Order will authorize dissemination of notice of the Settlement's terms and conditions to investors who are believed to be members of the Class.  The Court will then hold a final approval hearing (the "Settlement Hearing") so that the Parties and Class Members may present arguments and evidence for (or, in the case of any objections, against) the Settlement.  The Court will then make a final determination as to whether the proposed Settlement is a fair, reasonable, and adequate resolution of this matter.  To facilitate this process, the proposed Preliminary Approval Order will, among other things:

(i)   preliminarily approve the terms of the Settlement as set forth in the Stipulation;

(ii)  approve the form and content of the Notice, Claim Form, and Summary Notice, attached as Exhibits A-1, A-2 and A-3 to the Stipulation, respectively;

(iii) find that the schedule and procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

(iv)  set a schedule and procedures for: disseminating the Notice and Claim Form and publication of the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation and/or

Lead Counsel's application for attorneys' fees and reimbursement of litigation expenses; submitting papers in support of final approval of the Settlement; and setting the Settlement Hearing.

In sum, Plaintiffs believe that the proposed Settlement of $250 million is an excellent result and is in the best interests of the Class. Plaintiffs thus respectfully submit that the Settlement warrants preliminary approval so that Notice can be disseminated.

## II.   NATURE OF THE ACTION

This is a certified securities class action on behalf of all persons and/or entities that purchased or otherwise acquired Alibaba American Depositary Shares ("ADS"), or purchased call options or sold put options on Alibaba ADS, during the period September 19, 2014 through January 28, 2015, inclusive (the "Class Period"), other than those shares purchased directly in the September 19, 2014 Initial Public Offering (the "IPO"). Dkt. No. 56; Stipulation ¶1(h).[3]

Plaintiffs' Consolidated Class Action Complaint (the "Complaint") alleges that Defendants violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by making false and misleading statements and omissions in Alibaba's IPO Registration Statement and throughout the Class Period. Specifically, Plaintiffs allege that Defendants misled investors by failing to disclose the existence, content, and significance of a July 16, 2014 administrative guidance meeting with Chinese regulators (the "July 2014 Meeting), and thus misrepresented the true state of Alibaba's business, operations, and risks the Company was facing at the time of the Company's IPO and during the Class Period. *See generally* Dkt. No. 6 (Complaint); Dkt. No. 37 (Stipulation Concerning Operative Omission of

---

[3] Excluded from the Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of Alibaba at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time. Also excluded from the Class are any persons and entities who or which submit a request for exclusion that is accepted by the Court. Dkt. No. 56; Stipulation ¶1(h).

Material Fact).  Plaintiffs allege that these misrepresentations and omissions caused the price of Alibaba's ADSs to be artificially inflated during the Class Period.

Plaintiffs further allege that the Chinese government publicly disclosed the July 2014 Meeting in a document called the "White Paper Regarding the Administrative Guidance Provided to Alibaba Group" (the "White Paper") after the close of trading on January 27, 2015, 2015.  Finally, Plaintiffs allege that in response to this news, the price of Alibaba's ADSs fell by an abnormal negative return of $4.29 per share on January 28, 2015, damaging investors who had purchased Alibaba Securities at artificially inflated prices.

## III.    PROCEDURAL HISTORY

### A.    The Initial Complaints And MDL Proceeding

Beginning on January 30, 2015, investors filed multiple putative securities class action complaints against Defendants in United States District Courts in New York and California.  On May 1, 2015, the Court entered an Order consolidating the actions filed in the Southern District of New York, appointing William Tai and Christine Asia Co., Ltd., as Lead Plaintiffs for the Action pursuant to the Private Securities Litigation Reform Act of 1995, and appointing the Rosen Law Firm, P.A. as Lead Counsel for the putative class.  On June 9, 2015, the Judicial Panel on Multidistrict Litigation consolidated all of the actions in this Court.  Dkt. No. 1.

### B.    The Consolidated Amended Complaint And Motion To Dismiss

On June 30, 2015, Lead Plaintiffs filed their 100-page Complaint, together with approximately 100 pages of exhibits.  Dkt. Nos. 4, 6.  On July 31, 2015, Defendants filed a 40-page motion to dismiss the Complaint for failure to state a claim, attaching 22 exhibits in support of their motion.  Dkt. Nos. 16-18.  Among other things, Defendants argued that Lead Plaintiffs failed to plead the existence of a materially misleading statement or omission, and failed to plead a strong inference of scienter.  On August 28, 2015, Lead Plaintiffs filed their 40-page opposition

to Defendants' motion to dismiss, with exhibits.  Dkt. Nos. 20-21.  Defendants filed their reply in support of their motion on September 11, 2015.  Dkt. Nos. 25-26.

On April 6, 2016, Lead Plaintiffs filed a notice of recent authorities in further support of their opposition to the motion to dismiss.  Dkt. No. 27.  On April 12, 2016, Defendants also filed a notice of recent authorities in further support of their motion to dismiss.  Dkt. No. 28.  Lead Plaintiffs responded to this notice on April 14, 2016.  Dkt. No. 29.

### C.      The Motion To Dismiss Is Granted With Prejudice

On June 21, 2016, in a 40-page opinion, the Court granted Defendants' motion to dismiss in full with prejudice.  Dkt. No. 30.  Noting what the Court deemed to be "extensive cautionary disclosures" contained within Alibaba's IPO Registration Statement, the Court held that Plaintiffs failed to allege an actionable misrepresentation or omission.  *Id*. at 2, 17-34.  The Court likewise held that Plaintiffs failed to allege that Defendants acted with scienter.  *Id*. at 34-39.  Finally, the Court concluded that amendment would be futile because "Defendants were under no duty to disclose the July 16 Meeting[,]" and the Court thus declined to grant leave to amend on futility grounds.  *Id*. at 39-40.

### D.      The Appeal And Remand

On July 20, 2016, Plaintiffs filed a notice of appeal to seek Second Circuit review of the Court's dismissal order.  Dkt. No. 34.  On November 2, 2016, Plaintiffs filed their opening appellate brief.  Defendants filed their responsive brief on February 1, 2017.  The Second Circuit heard oral argument on the appeal on May 10, 2017.  On December 5, 2017, the Second Circuit issued an order reversing the District Court's dismissal of the case with prejudice, and remanded the Action to the District Court for further proceedings.  *Christine Asia Co. Ltd. v. Ma et al.*, 718 Fed. App'x 20 (2d Cir. 2017).  On January 12, 2018, the Parties attended an initial status

conference.  On January 19, 2018, the Court entered a scheduling order setting pertinent dates in the Action.  Dkt. No. 42.

On June 1, 2018, Defendants filed their answer to the Complaint.  Dkt. No. 57.

### E.    The Motion For Class Certification

Pursuant to the scheduling order, Plaintiffs filed their motion for class certification on March 12, 2018.  Dkt. Nos. 52-54.  In support of their motion, Plaintiffs submitted the expert report of Dr. David Tabak of NERA regarding market efficiency.  Dkt No. 54-1.  On April 30, 2018, after having deposed Lead Plaintiffs' market efficiency expert, Defendants filed a notice of non-opposition to class certification.  Dkt. No. 55.  On May 1, 2018, the Court entered an order certifying the Class and appointing William Tai, Christine Asia Co., Ltd., Abel Amoros, Arthur Gabriel, Raymond Lee, and Gang Liu as Class Representatives and The Rosen Law Firm, P.A. as Class Counsel.  Dkt. No. 56.

### F.    Discovery

Defendants made their first production of approximately 100,000 pages of documents on January 19, 2019—most of which were in Chinese and required translation.  During discovery, Lead Plaintiffs propounded six sets of Requests for Production of Documents, four sets of written Interrogatories, and three sets of written Requests for Admissions upon Defendants. Lead Plaintiffs also served 34 subpoenas on various third parties, including the IPO Underwriters, securities analysts, financial advisors, and public relations firms, in addition to a Freedom of Information Act request to the Securities and Exchange Commission.  In total, Plaintiffs reviewed more than 1.1 million pages of documents produced by Defendants and third parties pursuant to Plaintiffs' requests.

In July 2018, Plaintiffs took two Rule 30(b)(6) depositions of Defendant Alibaba over three days in Hong Kong.

The Parties met and conferred on discovery matters and disputes on a regular basis during the approximately 1-year discovery period. On September 18, 2018, Plaintiffs informed the Court of certain discovery disputes, including matters of privilege, that had arisen among, and could not be resolved by, the Parties.  Dkt. No. 61.  In October 2018, the Parties submitted letter briefing on the discovery dispute (Dkt. Nos. 65, 67, 71, 72), and the Honorable Magistrate Judge Stewart D. Aaron held a telephonic hearing on October 11, 2018.  On October 11, 2018, the Court ordered the Parties to submit additional briefing on matters of privilege.  Dkt. No. 73.  On October 12, 2018, the Court granted Plaintiffs' requested relief, in part, ordering Defendants to produce unredacted versions of documents previously redacted on the grounds of "relevancy and burden" no later than November 12, 2018.  Dkt. No. 74.

On October 30, 2018, Plaintiffs filed their motion to compel Defendants to produce certain documents and information that Plaintiffs argued were improperly withheld on privilege grounds.  Dkt. Nos. 85-88.  Defendants filed their opposition to the motion to compel on November 2, 2018.  Dkt. Nos. 93-95.  Plaintiffs filed their reply in support of the motion to compel on November 8, 2018.  Dkt. Nos. 100-101.  Judge Aaron held a telephonic hearing on the motion to compel on November 15, 2018 and issued an order granting in part and denying in part the motion to compel on November 16, 2018.  Dkt. No. 109.

On November 9, 2018, pursuant to the Parties' joint request, the Court entered an amended scheduling order extending the fact discovery cut-off by approximately one month, to February 1, 2019, along with a corresponding extension of other case dates.  Dkt. No. 105.

Between October 2018 and January 2019, Plaintiffs took the depositions of 20 additional Alibaba employees (19 of which were conducted in Hong Kong and one in New Zealand).  All but three of these depositions were conducted in Mandarin, taking two full business days to

complete, rather than one, because of the extended time required for translation and interpretation. Plaintiffs' Counsel also took the depositions of two third-party witnesses (one in Hong Kong and one in New York). In addition, each of the five Class Representatives was deposed by Defendants (two of the five were conducted in Hong Kong).

Additionally, Plaintiffs retained seven experts to testify on the topics of Chinese administrative law, Chinese regulation and politics, e-commerce and counterfeiting, due diligence standards in the IPO underwriting process, scienter and stock sales, and loss causation and damages. Defendants likewise retained seven experts who rendered competing opinions. The Parties exchanged opening expert reports on February 11, 2019, and rebuttal expert reports on March 11, 2019. Then the Parties conducted six expert depositions, and were in the process of conducting and concluding these depositions at the time the Settlement was reached, as described below.

In conclusion, over the course of the approximately 1-year discovery period, Plaintiffs' Counsel completed extensive fact, class, and expert discovery that well informed them of the strengths and weaknesses of their claims in the Action.

### G. Mediation Efforts And Settlement Negotiation

In the fall of 2018, while Plaintiffs were actively pursuing fact discovery, the Parties agreed to participate in a private mediation to explore whether they could reach a settlement. The Parties selected former United States District Court Judge Layn R. Phillips to serve as the mediator. The Parties exchanged extensive mediation briefing and exhibits in advance of a full-day mediation session that took place in New York on September 6, 2018. The session ended without an agreement to settle and the Parties proceeded with discovery.

Following the close of fact discovery, the Parties engaged in another mediation session to re-visit the possibility of a settlement. The Parties again exchanged detailed mediation

statements and exhibits in advance of another full-day mediation session with Judge Phillips, held on March 22, 2019.   Again the parties failed to reach a settlement.   Following the mediation, however, Judge Phillips presented a mediator's recommendation that the Action be settled for $250,000,000.   The Parties thereafter accepted the mediator's proposal and agreed in principle to settle the Action that was memorialized in a confidential term sheet (the "Term Sheet").   The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims referenced therein in return for a cash payment of $250,000,000 to be paid by Defendants for the benefit of the Settlement Class.   The Parties subsequently negotiated the full terms of the Settlement and memorialized them in the Stipulation.

## IV.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

### A.   Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate"

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).[4]   Rule 23(e)(1)(B) instructs that notice of a proposed settlement "must" be directed to potential Class members if the parties show that it is "likely" that the settlement will obtain final approval as "a fair, reasonable, and adequate" resolution under Rule 23(e)(2).

Thus, "[p]reliminary approval is generally the first step in a two-step process before a class-action settlement is approved."  *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005).   "In considering

---

[4] Unless otherwise noted, all emphasis is added and internal citations are omitted throughout.

preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "Once preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id*.  As discussed herein, the proposed Settlement merits preliminary approval and the Court should approve the Parities' requested form, manner and schedule for notice, final approval, and related events because these will fairly apprise Class Members of the terms of the Settlement and give them adequate opportunity to file claims upon, submit objections to, or exclude themselves from, the Settlement.

**B.     A Settlement Should Be Preliminarily Approved If It Is Procedurally And Substantively Fair**

In conducting a preliminary approval inquiry, a court considers both the '"negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'"  *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).   "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Platinum & Palladium*, 2014 WL 3500655, at *11; *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).   As demonstrated below, the proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

### C.      Public Policy Favors Settlement Of Securities Class Actions

"The decision to grant or deny such approval lies squarely within the discretion of the trial court, and this discretion should be exercised in light of the general judicial policy favoring settlement."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'").  This strong judicial policy equally applies here.

## V.      ARGUMENT

### A.      The Settlement Represents A Very Favorable Outcome For The Class And Warrants Preliminary Approval

#### 1.      The Settlement Is Fair, Reasonable, And Adequate

While Plaintiffs intend to make a fulsome showing under Rule 23(e)(2) in advance of the Final Settlement Hearing, a preliminary review of the Rule 23(e)(2) factors is warranted now to show that the Settlement merits granting preliminary approval and directing notice of the Settlement to be disseminated to the Class.  *See* Rule 23(e)(1)(A)-(B)(i).[5]  Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the relief to the Class is adequate; and (d) the Settlement treats Class Members equitably relative to each other.  Fed. R. Civ. P. 23(3)(2)(A)-(D).

---

[5] Rule 23(e)(1)(B)(ii), which requires that it is also "likely" that a class will be certified for judgment purposes, is not implicated by this Settlement because there already is a certified Class.

### a. Plaintiffs And Plaintiffs' Counsel Adequately Represented The Class

As detailed in Section III, *supra*, the individual Plaintiffs and Plaintiffs' Counsel have adequately represented the interests of absent Class Members.  Throughout the litigation of the Action, and in connection with the Settlement, the interests of Plaintiffs and Plaintiffs' Counsel have been fully aligned with the Class.  *Wal-Mart*, 396 F.3d at 106-07.  Plaintiffs' claims are identical to the claims of the Class, and each has demonstrated a commitment to prosecute this action on behalf of absent Class Members.  Indeed, Plaintiffs have significantly contributed to the Action by overseeing the litigation and communicating with Plaintiffs' Counsel, preparing for and sitting for their depositions, and participating in settlement discussions with Plaintiffs' Counsel.  *See, e.g.*, Dkt. Nos. 54-2 through 54-6 (Named Plaintiff declarations submitted at class certification).

Moreover, Plaintiffs' Counsel adequately represented the Class by: (i) skillfully litigating the Action, including by overcoming the dismissal of the Action with prejudice on a successful appeal, and obtaining Class certification; (ii) conducting an extensive and expensive fact discovery program which included the translation of tens of thousands of documents from Chinese to English, the review of over 1.1 million pages of documents, successful discovery motion practice, and taking two dozen depositions, the vast majority of which occurred in China and were conducted in Chinese; and (iii) expending significant additional resources on expert discovery, including the preparation of six opening reports and six rebuttal reports authored by seven different experts, on the topics of Chinese administrative law, Chinese regulation and politics, e-commerce and counterfeiting, due diligence standards in the IPO underwriting process, scienter and stock sales, and loss causation and damages.

        **b.**     **The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel**

The Settlement was achieved through good faith, arm's-length negotiations between well-informed and experienced counsel with the assistance of an experienced and highly respected mediator, after completion of extensive fact and expert discovery.

The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Judge Phillips, a former federal court judge, support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Bear Stearns Cos., Inc. Sec. Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (a settlement was entitled to a presumption of fairness where it was the product of "arms-length negotiation" facilitated by Judge Phillips, "a respected mediator").

In addition, as noted above, the settling Parties and their counsel were acutely aware of the strengths and weaknesses of the case prior to settling. Plaintiffs' Counsel successfully navigated the appeal, reviewed over 1 million pages of documents, took two dozen fact depositions, participated in six expert depositions, filed two motions to compel, successfully obtained class certification, participated in two full-day mediation sessions, and had begun preparing for summary judgment before the Settlement was reached. As a result, Plaintiffs and Plaintiffs' Counsel had a sound basis for assessing the strength of the Class's claims and Defendants' defenses when they entered into the Settlement. A proposed class action settlement

enjoys a "presumption of fairness" where, as here, it is the product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery.  *See Wal-Mart*, 396 F.3d at 116; *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

    **c.**    **The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation**

Courts assess the fairness, reasonableness, and adequacy of a proposed settlement by assessing whether it falls within the range of possible approval.  "[T]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart*, 396 F.3d at 119.  In making this determination, the adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

    **(1)**    **Risks Of Proving Liability**

The proposed Settlement provides a cash payment of $250 million for the benefit of the Class.  This is a tremendous result, especially when considered in light of the significant risks of continued litigation.  *See, e.g.*, *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder…litigation to assess the risks involved.").  Although Plaintiffs and

Plaintiffs' Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation posed very real risks that *no* recovery or a substantially lesser recovery might be achieved after summary judgment, trial and any appeals, which would take many additional months, and in fact could take years.

If the Action were to proceed through summary judgment and trial, Plaintiffs would have to continue to overcome substantial defenses asserted by Defendants as to both liability and damages.  Indeed, Defendants have vigorously contested their liability for securities fraud.  For example, Defendants have strenuously argued, and would have continued to argue, that the failure to disclose the July 2014 Meeting was immaterial as a matter of law—an argument that this Court agreed with at the motion to dismiss stage.  Moreover, while the Second Circuit overruled that determination as a matter of law, Defendants are sure to argue that various allegations and/or theories upon which Plaintiffs based their Complaint and appeal were not borne out in discovery.  Defendants likely would have argued that the evidence produced in discovery did not prove that Alibaba's compliance with the administrative guidance provided to the Company at the July 2014 Meeting caused it to "giv[e] up an important source of its revenue" or otherwise posed a serious risk of any "significant negative impact on Alibaba's revenues[.]" *Christine Asia Co.*, 718 Fed. App'x at 22.

Further, Defendants would have continued to argue that even if Plaintiffs could establish a material misstatement or omission, there was no evidence upon which Plaintiffs could prove the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness.  The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim.  *See, e.g.*, *Fishoff v. Coty Inc.*, No. 09-cv-628, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element

of scienter is often the most difficult and controversial aspect of a securities fraud claim"); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Here, Defendants were adamant that they had no intent to deceive.  For example, Defendants asserted that the July 2014 Meeting was a regular interaction with Alibaba's regulators that rung no particular alarm bells—either for Alibaba's business generally or as it related to the IPO.

Moreover, according to Defendants, rather than hide anything about this development, Alibaba had every incentive to *comply* with the requests levied by its regulator in the administrative guidance in order to improve Alibaba's business.  Further, Defendants would have continued to argue that, rather than acting intentionally or recklessly to conceal any negative regulatory development, the Company actually made fulsome and detailed risk disclosures in its IPO registration statement to warn investors of risks relating to the sale of counterfeit goods on Alibaba's platforms and the related risks of increased governmental oversight.  If Defendants succeeded on these arguments, then, even if Plaintiffs were able to demonstrate that Defendants made a materially misleading statement or omission, Defendants could nevertheless escape liability by establishing that they did not act intentionally or recklessly.

### (2)   Risks Relating To Loss Causation And Damages

In response to the adverse evidence obtained in discovery, Plaintiffs narrowed their theory of liability and conceded that the amount of provable damages in this case were less than initially alleged.  For example, the Complaint alleged losses from two corrective disclosures: first, the January 28, 2015 ADS price drop following the publication of the White Paper (Complaint ¶¶15, 16), and a second drop following Alibaba's disappointing January 29, 2015 earnings announcement (Complaint ¶¶17, 19).  Fact and expert discovery in this matter, however, has revealed that the price drop on January 29, 2015 cannot be proven to have been

caused by the alleged fraud relating to Defendants' concealment of the July 2014 Meeting (as opposed to non-fraud related news contained in the disappointing earnings announcement).[6] Plaintiffs' expert estimates that the provable and potentially recoverable damages flowing from the corrective disclosure of the alleged fraud on January 28, 2015 are approximately $1,455,300,000.[7] Thus, the $250,000,000 Settlement Amount represents approximately 17% of the maximum estimated Class-wide damages caused by the alleged fraud.

Defendants also raised numerous arguments as to loss causation and damages, including that Plaintiffs could not prove loss causation with respect to the January 28, 2015 price decline because, Defendants argued, the market was reacting to the highly unusual method of publication of a "White Paper" by the Chinese government, rather than to its contents.  Further, Defendants argued that even if loss causation could be proven, damages would be limited to the price impact of new, valuation-relevant information in the White Paper that was *beyond* what the market already knew about the risks of counterfeiting and increased regulatory oversight at the time— which new information Defendants claim was limited.  Thus, Defendants argued that the per-share inflation as a result of the alleged fraud (if any) was much less than the $4.29 per ADS claimed by Plaintiffs.[8]

---

[6] For example, in his expert report on loss causation and damages, Dr. Tabak explained that he tested Plaintiffs' theory that increased counterfeit enforcement by Alibaba contributed to the disappointing January 29 earnings announcement, but concluded that the evidence was insufficient to prove loss causation and damages on that basis flowing from the January 29, 2015 price drop.  Rosen Decl. at ¶6. Dr. Tabak thus concluded "that [while] there are arguments to be made for attributing some portion of the negative ADS response to the January 29, 2015 earnings announcement to unexpected lost revenue and/or unexpected costs related to Alibaba's response to the July 2015 meeting, *my calculations show that that portion is likely immaterial and, in fact, may be zero. Consequently, I do not attribute any portion of the January 29, 2015 ADS decline to a corrective disclosure*." *Id.* (emphasis added).

[7] Rosen Decl. at ¶7.

[8] Plaintiffs' expert estimates that maximum recoverable damages under Defendants' alternative aggregate damages model would have been approximately $1.23 billion.  Under this scenario, the Settlement represents an approximate 20% recovery.  Rosen Decl. at ¶8.  This damages calculation *doesn't* account

*(Cont'd)*

The Settlement is exceptional considering these risks and as compared to other settlements in securities class actions alleging losses of a similar magnitude, which in 2018 recovered approximately 2% of alleged damages.[9]

Finally, even if Plaintiffs overcame all of these significant risks and prevailed at trial, such a victory would not have guaranteed the Class an ultimate recovery larger than the $250,000,000 Settlement.  *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

In sum, the Parties disagreed on numerous complex issues of fact and law.  While Plaintiffs and Plaintiffs' Counsel believe that this case has substantial merit and that they could successfully counter each of Defendants' arguments, it is nevertheless true that Defendants had

---

for Defendants' loss causation arguments that the January 28, 2015 stock drop was caused by factors unrelated to the fraud, such as the unusual method of disclosure in an unsanctioned "White Paper," that Defendants contend was not in fact a White Paper, or their contention that the core information in the White Paper regarding counterfeiting had been previously disclosed to the market.  Had Defendants prevailed in their loss causation arguments, damages would have been zero or an amount significantly less than that recovered in the Settlement.  Rosen Decl. ¶¶8-11.

[9] Rosen Decl. Ex. 2 (Cornerstone Report, "Securities Class Action Settlements 2018 Review and Analysis," at p. 6 Figure 5 (reporting median percentage of recovery in cases alleging greater than $1 billion in damages was 2% in 2018)); *see also id.* Ex. 3 (NERA Report, "Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review," at p. 35 Figure 27 (reporting median percentage of recovery in cases alleging between $1-$4.99 in billion damages is 1.2%)).

serious defenses that, if successful, would have resulted in the Class recovering *far less* than the proposed Settlement *or nothing at all*.  In the context of these risks, Plaintiffs and Plaintiffs' Counsel believe that the $250 million Settlement is an excellent result for the Class and respectfully submit that preliminary approval is appropriate.

>           **2.      The Settlement Treats All Members Of The Class Equitably Relative To Each Other**

The Settlement does not provide preferential treatment to the individual Plaintiffs or any other segment of the Class.   The proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Plaintiffs' Counsel, is set forth in the Notice and provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Claim Forms.  *See* Ex. A-1 (Notice) at pp. 14-27.  Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss amount for each Class Member's purchases of Alibaba ADSs and call options, and sales of put options, during the Class Period for which adequate documentation is provided.   *Id.*   The Plan of Allocation caps aggregate payments to options holders to 10% of the Settlement Amount because options holders' total estimated damages account for less than 10% of the total aggregate of damages to all Class Members.  *Id.* at 25, n.19.

The calculation of each Class Member's Recognized Loss under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the Alibaba Securities were purchased and sold, the type of Alibaba Securities purchased or sold, the purchase and sale price of the Alibaba Securities, and the estimated artificial inflation (or deflation in the case of put options) in the respective prices of the Alibaba Securities at the time of purchase and at the time of sale as determined by Plaintiffs' damages expert.  The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the type

of security (*i.e.*, ADS or option) and the relative size of their Recognized Loss(es).  Similar plans have repeatedly been approved by Courts in this District.  *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010); *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006).

**B.    The Court Should Approve the Proposed Form and Method of Notice To The Class**

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Stipulation) to all Class Members who can be identified with reasonable effort, including through the records maintained by Alibaba during the Class Period, as well as post the Notice and the Claim Form on a website to be developed for the Settlement.[10]  The Claims Administrator will also utilize a list of approximately 1,400 of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.

The proposed Notice, Exhibit A-1 to the Stipulation, clearly and accurately discloses the information material to a Class Member's decision whether to accept, object to, or opt out of the Settlement.  The Notice provides detailed information concerning: (a) the proposed Settlement (including the Settlement Amount and releases to Defendants); (b) the nature, history, and

---

[10]  Plaintiffs request that the Court approve the retention of Strategic Claims Services ("Strategic") as the claims administrator for this case.  After a bidding process, Plaintiffs' Counsel negotiated competitive and favorable terms with Strategic, which has successfully administered numerous complex class action settlements and judgments, including for example: *In re Bank One Sec. Litig.*, No. 00-C-767 (N.D. Ill.) (administration of $120 million securities settlement); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00CV01884 (D. Conn.) (administration of $80 million securities settlement); *Braun/Hummel v. Wal-Mart Stores, Inc.*, No. 3127, No. 3757 (Penn. Court of Common Pleas) (administration of $242 million wage and hour settlement).

progress of the Action; (c) the date of the Settlement Hearing; (d) the proposed Plan of Allocation; (e) the maximum fees and Litigation Expenses to be sought by Plaintiffs' Counsel (including compensatory awards to be sought by Plaintiffs); (f) the rights of Class Members, including the procedures for opting-out of the Settlement, filing a Proof of Claim, or objecting to the Settlement, Plan of Allocation, Plaintiffs' Counsel's request for fees and expenses, or Plaintiffs' request for a compensatory award; and (g) how to contact Plaintiffs' Counsel, access the Court's docket, or otherwise learn more about the Action and Settlement.

The Notice also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7).   It provides:

- a cover page summarizing the information contained in the Notice;

- a statement of the Class Members' recovery before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by any specific Class Member to vary greatly across the Class;

- the general terms of the Settlement;

- a statement of the potential outcome of the case including a statement concerning the issues on which the parties disagree;

- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;

- information on how to contact the Claims Administrator and/or Plaintiffs' Counsel (including names, addresses, telephone numbers, and websites);

- a discussion of the reasons for the Proposed Settlement, including the factors Plaintiffs and the Defendants considered in reaching the Settlement; and

- information on the date, time and place of the Settlement Hearing, as well as the procedures by which to object to or opt out of the Settlement.

Thus, the proposed Notice to be sent to the Class provides all of the information required by the PSLRA.  The Court should approve the proposed form of Notice and direct that notice be given to the Class.  In addition to the mailing of the Notice and Claim Form, the Summary

Notice (Exhibit A-3 to the Stipulation) will be published in *Investor's Business Daily*, *Barron's*, *Futures*, and *The Wall Street Journal*, and transmitted over the *PR Newswire*.  Exhibit A, ¶4(d).

Accordingly, the proposed form and manner of providing notice of the Settlement to the Class satisfies the requirements of due process, Rule 23, and the PSLRA.  *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VI.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The specific timing of events is determined by the date on which the Preliminary Approval Order is entered and the date on which the Settlement Hearing is scheduled.  In order to allow sufficient time for the Notice program, Plaintiffs request that Court schedule the Settlement Hearing for a date not earlier than 150 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶4(a)) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶4(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶23) | Not later than 35 calendar days prior to the Settlement Fairness Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶10, 14) | Not later than 21 calendar days prior to the Settlement Fairness Hearing |

| Deadline for filing reply papers (Preliminary Approval Order ¶23) | 7 calendar days prior to the Settlement Fairness Hearing |
|---|---|
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶7) | 105 calendar days after the Notice Date |
| Settlement Fairness Hearing | Not earlier than 150 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

## VII.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and direct that Notice be disseminated to potential Class Members.

Dated:  April 29, 2019                                 THE ROSEN LAW FIRM P.A.


By:  _s/ Laurence Rosen_
Laurence Rosen
Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com

_Counsel for Plaintiffs and the Class_

## **CERTIFICATE OF SERVICE**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On April 29, 2019, I served true and correct copies of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF DISSEMINATION OF NOTICE TO THE CLASS**, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 29, 2019, at New York, New York.

*/s/ Laurence Rosen*
Laurence Rosen