UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE ASIA CO., LTD., et al.,<br><br>                              Plaintiffs,<br><br>             v.<br><br>JACK YUN MA, et al.,<br><br>                              Defendants. | No.: 1:15-md-02631-CM (SDA)<br><br>Related cases:<br>1:15-cv-00759-CM<br>1:15-cv-00811-CM<br>1:15-cv-00991-CM<br>1:15-cv-01405-CM<br>1:15-cv-05020-CM<br>1:15-cv-04991-CM<br>1:15-cv-05002-CM |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
<u>MOTION FOR CLASS DISTRIBUTION ORDER</u>**

# TABLE OF CONTENTS

I. BACKGROUND ........................................................................................................ 1

II. CLAIMS ADMINISTRATION ............................................................................... 2

III. THE COURT SHOULD REJECT THE EIGHT DISPUTED CLAIMS ............ 4

    A. Inadequate Supporting Documentation ............................................................ 4

    B. Ineligible Claims ................................................................................................. 6

IV. LATE BUT OTHERWISE ELIGIBLE CLAIMS .................................................. 8

V. DISTRIBUTION OF NET SETTLEMENT FUND ............................................. 10

VI. RELEASE OF CLAIMS .......................................................................................... 11

VII. ADMINISTRATION-RELATED FEES AND EXPENSES ................................ 12

VIII. NOMINEE FEE INVOICE .................................................................................... 12

IX. RECORDS RETENTION AND DESTRUCTION ............................................... 13

X. CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

CASES

*Hartman v. Powell*,
  2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ................................................................. 9

*In re Citigroup Inc. Sec. Litig.*,
  No. 09-MD-2070 2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ................................. 9

*In re Gypsum Antitrust Cases*,
  565 F.2d 1123 (9th Cir. 1977) ..................................................................... 8, 9, 10, 11

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  246 F.3d 315 (3d Cir. 2001) ....................................................................................... 8, 9

*In re Toyota Motor Corp. Sec. Litig.*,
  2014 WL 12586787 (C.D. Cal. Aug. 4, 2014) ...................................................... 12, 13

*In re "Agent Orange" Prod. Liab. Litig.*,
  689 F. Supp. 1250 (E.D.N.Y. 1988) ............................................................................ 9

Class Representatives William Tai and Christine Asia Co., Ltd., Abel Amoros, Arthur Gabriel, Raymond Lee, and Gang Liu (collectively, "Plaintiffs"),[1] respectfully submit this memorandum of law in support of their unopposed motion for entry of the Proposed Class Distribution Order ("Motion") in the above-captioned Action.[2] If entered by the Court, the Class Distribution Order will, among other things, (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action; and (iv) rule on the propriety of reimbursing certain charges submitted by one of the nominees that gave notice to Class Members. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Mulholland Declaration. *See* Mulholland Decl. ¶23(a)-(f).

## I. BACKGROUND

On April 29, 2019, the Parties entered into the Stipulation, the terms of which established a $250,000,000 Settlement Fund on behalf of the Class, consisting of all persons and/or entities that purchased or otherwise acquired Alibaba ADS, or purchased call options or sold put options on Alibaba ADS, during the period September 19, 2014 through January 28, 2015 inclusive, other than those shares purchased directly in the September 19, 2014 Initial Public Offering.

---

[1] All capitalized terms that are not otherwise defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated April 29, 2019 (ECF No. 123-1, the "Stipulation"), or the Declaration of Paul Mulholland Concerning the Results of the Claims Administration Process ("Mulholland Decl." or "Mulholland Declaration"), submitted concurrently herewith on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("Claims Administrator").

[2] Counsel for Defendants represented to Lead Counsel that Defendants do not oppose the Motion.

1

The Court granted preliminary approval of the Settlement on May 1, 2019 (ECF No. 126, the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator disseminated approximately 1,086,191 copies of the Notice and Claim Form (together the "Notice Packet") by first-class mail or e-mail to potential Class Members, published the Summary Notice in *Investor's Business Daily*, *Barron's*, *The New York Times*, and *The Wall Street Journal*, transmitted the Summary Notice over *PR Newswire* (a national newswire service), established a settlement specific website (www.AlibabaSettlement.com, the "Settlement Website"), and set up a toll-free telephone helpline. *See* Mulholland Decl. ¶¶5-7. The Settlement Website and helpline enabled Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form.

On October 16, 2019, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate. ECF No. 148. That same day, the Court also entered an order approving the Plan of Allocation, which was explained in the Notice disseminated to potential Class Members and posted on the Settlement Website, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 149.

Lead Counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of any outstanding nominee expenses as discussed below, the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Class Members wishing to participate in the

Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than September 3, 2019.  *See* Notice (ECF No. 132-1, Exhibit A) at 3.  The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency.  Mulholland Decl., ¶¶9-16.

Of the 166,891 Claims submitted to and fully processed by the Claims Administrator, 20,217 were paper submissions, and 3,950 were online submissions through the online filing component on the Settlement Website.  *Id.*, ¶19.  The remaining 142,724 Claims were electronic Claims filed by brokers, banks, nominees, and other third-party filers that file Claims on behalf of numerous Claimants ("Electronic Claims").  *Id*.

If a Claim Form was deficient or defective, the Claims Administrator sent a Deficiency Notice, a sample of which is attached as Exhibit C to the Mulholland Declaration.  *Id.*, ¶¶14, 20(b) and Ex. C.  The Deficiency Notice advised the Claimant that he, she, or it had fourteen (14) days to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection.  *Id.*, ¶14.  Of the 24,167 paper and online Claims, the Claims Administrator sent Deficiency Notices for 1,950 Claims (or approximately 8%).  *Id*.  Similarly, of the 142,724 Electronic Claims, 54,324 (or approximately 38%) were incomplete or deficient and were filed by a total of 9 unique Electronic Claim filers.  *Id*.  The Claims Administrator sent a Deficiency Notice to each of these 9 filers informing them of the 54,324 Electronic Claims determined to be defective.  *Id*.  The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Mulholland Declaration, after the deficiency process was complete, the Claims Administrator determined that 30,961 Claims are acceptable and should receive a distribution. Mulholland Decl., ¶20(a). This number includes 30,577 timely and valid claims, and 384 late but otherwise valid claims (addressed in Section IV below). *Id*. These 30,961 Claims represent a total Recognized Loss amount of $195,408,673.64.[3] *Id.*, Exs. B-1 & B-2. The Claims Administrator also determined that 135,930 Claims are not eligible and should be rejected. Included in this category are: (i) inadequately documented Claims; (ii) Claims with no Recognized Losses; (iii) Claims with shares purchased outside of the Class Period; (iv) Claims filed with shares that were received or transferred into an account, but not purchased; (v) Claims with shares sold short; (vi) duplicate filed Claims; (vii) Claims filed for securities other than Alibaba Group Holding Limited American Depositary Shares, Call Options, and/or Put Options; (viii) claims withdrawn from filing entity; and (ix) fraudulent claims. *Id.*, ¶¶20(b), 20(c), Exs. D & H.

### III. THE COURT SHOULD REJECT THE EIGHT DISPUTED CLAIMS

As part of the deficiency process, the Claims Administrator informed Claimants whose Claims were rejected that they could request judicial review of their Claims. Mulholland Decl., ¶16. Seven Claimants (one Claimant is associated with two separate Claims) requested such review and for the reasons stated below, the Court should accept the Claims Administrator's determination to reject each of the disputed Claims.

#### A. Inadequate Supporting Documentation

In order to be eligible for a payment from the proceeds of the Settlement, a Class Member must submit a Claim Form with adequate supporting documentation. *See* ECF No. 132-

---

[3] The Recognized Loss amount is $192,894,875.88 for timely and valid Claims and $2,513,797.76 for late but otherwise valid Claims. *Id.*, ¶20(a).

4

1 Exhibit A (Notice) at ¶41.  As detailed in the Court-approved Claim Form, proper documentation may consist of copies of brokerage confirmation slips, monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement.  *See* Claim Form (ECF No. 132-1, Exhibit A) at 23-24; *see also*, Mulholland Decl., ¶20(b).[4]

The first contested determination arises from a third-party claims filer, Alphaplus Portfolio Recovery ("Alphaplus") who filed Claims on behalf of 16 institutions and 54,300 beneficial owners ("Alphaplus Claims").  Alphaplus submitted only Excel spreadsheets listing trading data and holdings as supporting documentation.  The Claims Administrator contacted Alphaplus on at least two separate occasions, informing the filer that the documentation provided was insufficient support for the Alphaplus Claims and requesting Alphaplus provide proper supporting documentation.  Alphaplus has not complied and instead responded with a letter contesting the Claims Administrator's determination rejecting the Alphaplus Claims.  Mulholland Decl., ¶20(b)(i), Ex. E (emails exchanged between Claims Administrator and Alphaplus).  Claim 1,969 was also submitted without adequate supporting documentation.  *Id.*, ¶20(b)(ii), Ex. F.  The Claims Administrator notified this Claimant of the deficiency and requested valid documentation sufficient to process the Claim.  *Id.*  The Claimant submitted another letter, but again, failed to include any supporting documentation evidencing the purchase of Alibaba Securities during the Class Period.  *Id.*  Finally, Claim 164,943 (Foxbourne Holdings Limited ("Foxbourne") and Claim 164,984 (Gaia Holdings Limited ("Gaia")) were filed by two

---

[4] For a claim to have proper supporting documentation, Claimants must have provided broker confirmations or broker statements of holdings as of September 19, 2014 and April 28, 2015, as well as broker statements or broker trade confirmations of the transactions made during the Class Period (September 19, 2014 through and including January 28, 2015) and transactions made during the 90-day look-back period (January 29, 2015 through and including April 28, 2015).  *Id.*

5

entities located in Gibraltar, United Kingdom. In addition to using the incorrect Cusip number, the Claims Administrator requested supporting documentation from these Claimants to verify their reported transactions were in fact made through a U.S. clearing firm. *Id.*, ¶20(b)(iii), Ex. G. Neither Claimant was able to provide the Claims Administrator with the requested documentation. *Id.*[5]

The Court approved the content of the Notice and Claim Form when issuing the Preliminary Approval Order and mandated the documentation necessary to the submission of a valid claim. *See* Preliminary Approval Order at ¶5. Each of the aforementioned Claimants have failed to provide proper documentation and the Court should, therefore, accept the Claims Administrator's determination to reject these Claimants' disputed Claims.

### B.     Ineligible Claims

In order to be eligible for a payment from the proceeds of the Settlement, a Class Member must evidence transactions that result in a Recognized Loss pursuant to the Court-approved Plan of Allocation. *See* Notice (ECF No. 132-1, Exhibit A) at 10-17. Of the 80,442 Claimants notified of the Claims Administrator's determinations to reject these ineligible Claims, four have contested the Claims Administrator's determinations. Mulholland Decl., ¶20(c). For the reasons set forth below, each of these four Claims should be rejected.

Upon review of three of the ineligible Claims contested (*i.e.*, Claim 555, Claim 165,339, and Claim 166,263), the Claims Administrator noted that each of these Claimants made multiple purchases and sales during the Class Period, which resulted in a trading gain. *Id.*, ¶20(c)(i),

---

[5] In a similar fashion, Foxbourne and Gaia also filed claims in the $3 billion Petrobras Securities Litigation settlement ("Petrobras Settlement"), Case Number 14-cv-09662 (JSR), United States District Court for the Southern District of New York. The Foxbourne and Gaia claims filed in the Petrobras Settlement were both rejected by the Judge Rakoff for insufficient documentation. Neither Foxbourne nor Gaia appealed Judge Rakoff's decision. *Id.*

Ex. J.  The Plan of Allocation, which was included in the Notice disseminated to Class Members, notified Class Members that "[t]o the extent a Claimant had a trading gain or `broke even' from his, her, or its overall transactions in Alibaba Securities during the Class Period, the value of the Total Recognized Loss will be zero, and the Claimant will not be entitled to a share of the Net Settlement Fund."  *See* Notice (ECF No. 132-1, Exhibit A) at 16.  The Claims Administrator sent each of these Claimants an ineligibility notice, explaining to each of the Claimants that their claims did not result in a Recognized Loss pursuant to the Plan of Allocation.  The Claimant for Claim 555 simply responded that he sought judicial review, but did not provide any further reasoning for why his Claim was improperly rejected.  *See* Mulholland Decl., Ex. J at 17.  The Claimant associated with Claims 165,339 and 166,263 provided his own calculation of the transactions submitted to which the Claims Administrator responded with the calculation of the submitted transactions resulting in no Recognized Loss.  *Id.* at 139-48.  The Claimant associated with Claims 165,339 and 166,263 then responded that he sought judicial review based on his own calculation.  *Id.* at 149-161.

Finally, upon review of Claim 146,885, the Claims Administrator noted that the Claimant purchased 400 shares of Alibaba ADS for $86.36 per share on October 2, 2014, and held all 400 shares through the end of the Class Period.  Mulholland Decl., ¶20(c)(ii).  This is less than the $98.45 per share holding value assigned to shares held through the end of the Class Period.  *Id.*  Pursuant to the Court-approved Plan of Allocation, this resulted in no Recognized Loss.  The Plan of Allocation, which was included in the Notice disseminated to Class Members, notified Class Members that "[f]or purposes of determining whether a Claimant had a trading gain from his, her, or its overall transactions in the Securities during the Class Period or suffered a trading loss, the Claims Administrator shall determine the difference between the Total Purchase

7

Amount and (ii) the sum of the Total Sales Proceeds and Total Holding Value."[6]  *See* Notice (ECF No. 132-1, Exhibit A) at 16.  The Claims Administrator sent the Claimant an ineligibility notice, explaining that his claim did not result in a Recognized Loss pursuant to the Plan of Allocation.  The Claimant responded that he disagreed with the Claims Administrator's conclusion, but did not provide any further explanation and instructed the Claims Administrator that he sought judicial review.

Accordingly, for the aforementioned reasons, it is respectfully submitted that the Court should accept the Claims Administrator's determination to reject Claim 555, Claim 165,339, Claim 166,263, and Claim 146,885.

## IV.   LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the September 3, 2019 claims filing deadline.  Although the Claims Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place.  *See In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001).  Accordingly, the Claims Administrator imposed a cut-off date of December 31, 2019—almost 4 months after the Court-imposed September 3, 2019 deadline.[7]

---

[6] For Alibaba ADSs still held as of the close of trading on January 28, 2015, the Claims Administrator shall ascribe a "Holding Value" of $98.45 per share.  *See* Notice (ECF No. 132-1, Exhibit A) at 16.

[7] SCS has not processed any additional documents received after May 26, 2020 or any claims filed after December 31, 2019 due to extreme lateness and because their inclusion would have

8

Of the 166,891 Claims submitted, 1,062 were received or postmarked after the September 3, 2019 deadline, but before the Claims Administrator's imposed cut-off date of December 31, 2019. Mulholland Decl., ¶19. Of these 1,062 Claims, 384 are otherwise eligible ("Late But Otherwise Eligible Claims"). *Id.*, ¶20(a). These 384 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Claim Forms, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Mulholland Decl., ¶23(a)-(f).

It is also respectfully requested that the Court enter an Order directing that no Claims received after December 31, 2019, or responses to deficiency and/or rejection notices received after May 26, 2020, be included in the distribution. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, No. 09-MD-

---

delayed the finalization of the administration. Mulholland Decl., ¶19, n.4.

9

2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

V.     **DISTRIBUTION OF NET SETTLEMENT FUND**

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an Initial Distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more. *See* Mulholland Decl., ¶23(a). Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.*, ¶23(b).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. If, however, after eight (8) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, then if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a redistribution. During the redistribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such re-distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution.

10

*Id.*, ¶23(c).  Following the redistribution, additional redistributions will occur following the same process of the first redistribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determine additional distributions are no longer economically feasible.  *Id.*

Finally, following this discretionary distribution, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to Memorial Sloan Kettering Cancer Center.  *See* Stipulation ¶9; Mulholland Decl. ¶23(c).  The proposed Class Distribution Order filed herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## VI. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs,

Lead Counsel, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to the terms of the Distribution Order.  *See In re Top Tankers, Inc. Sec. Litig.*, Order Authorizing Distribution of Net Settlement Fund at p.4, ECF No. 123, Case No. 1:06-cv-13761-CM (S.D.N.Y Dec. 14, 2009); *In re Veeco Instruments Inc. Sec. Litig.*, Order Approving Distribution of Net Settlement Fund at ¶8, ECF No. 171, Case No. 1:05-cv-10226-CM (S.D.N.Y. Sept. 8, 2009); *In re Toyota Motor Corp. Sec. Litig.,* 2014 WL 12586787, at *3 (C.D. Cal. Aug. 4, 2014).

## VII. ADMINISTRATION-RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total fees and expenses charged by the Claims Administrator in this matter are $2,540,929.33.  Mulholland Decl., ¶22, Ex. L (compilation of Claims Administrator's invoices).  To date, the Claims Administrator has received payment of $2,540,929.33.  Accordingly, there is no outstanding amount payable to the Claims Administrator.  The estimate to conduct the initial distribution is $97,000.00.  *Id.*, Ex. M.  Therefore, Lead Counsel request that the Court authorize the payment to the Claims Administrator, from the Settlement Fund, of $97,000.00 in anticipation of the work that will be performed for the initial distribution.[8]  *Id*.

## VIII. NOMINEE FEE INVOICE

Pursuant to the Preliminary Approval Order, nominees may seek reimbursement of reasonable expenses actually incurred in complying with the Preliminary Approval Order, in an amount not to exceed $0.20 plus postage at the current pre-sort rate used by the Claims Administrator per Notice Packet mailed; or $0.05 per Notice Packet transmitted by email; or

---

[8] If the anticipated fees and expenses to conduct the initial distribution are less than the actual cost to conduct said distribution, the excess will be returned to the Net Settlement Fund.

12

$0.10 per name, mailing address, and email address provided to the Claims Administrator. Preliminary Approval Order ¶6. One nominee, Broadridge, did not comply with the Preliminary Approval Order and submitted invoices totaling $280,874.26. *See* Mulholland Decl., ¶24. Broadridge did not limit its postage rate to the current pre-sort rated used by the Claims Administrator of $0.414[9] and, therefore, exceeded the maximum reimbursable amount authorized by the Court by $74,733.56. *Id.* Accordingly, Plaintiffs respectfully request the Court to deny Broadridge the additional $74,733.56 it has requested because it exceeds the amount for Notice costs previously set by the Court.

## IX.     RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request that the Court order that: (i) in no less than one (1) year after the second distribution of the Net Settlement Fund, if that occurs, or, if there is no second distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶20(f).

## X.     CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court grant the Motion.

---

[9] Broadridge domestic postage rate was approximately $0.69 per mailing of the same Notice Packet mailed by SCS resulting in overcharges totaling $74,733.56.

| | |
|---|---|
| Dated: October 9, 2020 | THE ROSEN LAW FIRM P.A. |

By: *s/ Laurence Rosen*
Laurence Rosen
Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com

*Counsel for Plaintiffs and the Class*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On October 9, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 9, 2020.

*s/ Laurence Rosen*
Laurence Rosen